IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT S. TAYLOR, an individual | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05 C 5596 |
| | ) | |
| RESCON TECHNOLOGY CORPORATION, | ) | |
| NAYNA NETWORKS, INC., individually and as | ) | |
| successor to RESCON TECHNOLOGY | ) | |
| CORPORATION, NORTHEAST | ) | |
| DEVELOPMENT CORPORATION, | ) | |
| individually and as successor to RESCON | ) | |
| TECHNOLOGY CORPORATION, NAVEEN | ) | |
| S. BISHT and HENDRICK KLAUSGAARD | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Robert S. Taylor ("Taylor"), by his attorneys, Stahl Cowen Crowley LLC, states

against Northeast Development Corporation ("Northeast"), individually and as successor

to Rescon Technology Corporation ("Rescon") and Hendrick Klausgaard ("Klausgaard")

(sometimes collectively referred to as the "Defendants")[1] as follows:

### I.

### OVERVIEW

1.     Taylor is a retired individual living in the State of Illinois.  In late 2003,

Robert Taylor was targeted, contacted and solicited over the telephone by Rescon to

invest funds in the company.  Taylor was told that this investment was suitable for him

because he would purchase Convertible Promissory Notes (a purportedly "safe"

---

[1] On May 26, 2006, pursuant to Taylor's Notice of Dismissal, Nayna Networks, Inc., Rescon Technology Corporation and Naveen S. Bisht were dismissed as Defendants in the instant action with prejudice pursuant to FRCP 41(a)(1). Therefore, the only remaining Defendants are Northeast and Klausgaard.

investment) that could be converted into Rescon stock upon demand, balancing a "safe" investment with the possibility for converting the Promissory Notes to stock. With this understanding, Taylor invested money on several occasions and, in turn, received several Convertible Promissory Notes (the "Notes") from Rescon. In late 2004, Taylor contacted Klausgaard (Rescon's CEO) and others at Rescon to convert the Notes to stock. He was told that the conversion documents were being mailed to him. Through the end of 2004 and into 2005, Taylor corresponded numerous times (both over the telephone and in writing) to Klausgaard and/or Bisht (by then a Rescon officer) to convert the Notes. No response was forthcoming. In or about April 2005, Taylor was told that his Notes had been transferred from Rescon to Nayna and/or Northeast pursuant to a purported merger. Taylor had no prior notification of any such transfer. Sensing that a scheme was afoot, Taylor repeatedly contacted Rescon, Nayna and Northeast regarding the investment and the conversion of the Notes. Despite his efforts, he received no response. Taylor's counsel has likewise received no response from any of the Defendants after writing a letter to them on Taylor's behalf. It is now clear that the Defendants have carried out a scheme to take Taylor's money, and likely that of the other individuals that the Defendants were targeting. That is the basis of this lawsuit.

## II.

## THE PARTIES

2.      Robert Taylor is an individual aged 80 years residing in the State of Illinois.

3.      Rescon Technology Corporation is (or was), upon information and belief, a Nevada corporation with its principal place of business located at 1500 Market Street,

2

12th Floor, East Tower, Philadelphia, PA 19102. Rescon is (or was) in the business of developing software programs.

4.    Northeast Development Corporation is, upon information and belief, a Nevada corporation with its principal place of business located at 1500 Market Street, 12th Floor, East Tower, Philadelphia, PA 19102. Based on press releases, Northeast also does business in Hartford, Connecticut.

5.    Hendrick Klausgaard ("Klausgaard") was the Chief Executive Officer, President and Secretary and a member of the Board of Directors of Rescon prior to Bisht. Upon information and belief, Klausgaard is now the President and/or CEO of Northeast.

### III.

### JURISDICTION AND VENUE

6.    Taylor's claims arise, in part, under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)-5, as promulgated thereunder. 15 U.S.C. Section 78j(b); 17 C.F.R. Section 240.10(b)-5. Accordingly, jurisdiction is proper pursuant to 28 U.S.C. Section 1331 and 15 U.S.C. Section 78aa.

7.    Taylor's state law claims are so closely related to his federal claim that they are part of the same case or controversy and, therefore, are properly brought within this action pursuant to 28 U.S.C. Section 1367.

8.    The acts and omissions complained of in this Complaint occurred and/or had an effect upon Taylor within this judicial district. Accordingly, venue is appropriate pursuant to 28 U.S.C. Section 1391(b) and 15 U.S.C. Section 78aa.

## IV.

## **FACTS COMMON TO ALL COUNTS**

9.      In early 1993, Taylor was contacted via telephone by John Berlin ("Berlin") of Rescon. Berlin advised Taylor that he could invest in Rescon because Rescon was offering a "safe" investment for previous shareholders of "Speed of Thought" a corporation previously acquired by Rescon.

10.      Berlin told Taylor that the investment was "safe" because he would receive Convertible Promissory Notes from Rescon in the amount of his investments. The Notes could, at Taylor's option, be converted to Rescon common stock. Alternatively, the Notes could be held at an interest rate of eight percent (8%) per annum until maturity.

11.      In December 2003, Taylor purchased his first Notes from Rescon. On December 3, 2003, Taylor received correspondence from Christian Nigohossian ("Nigohossian"), then Rescon's President, enclosing a copy of a $2000.00 Note bearing interest at a rate of eight percent (8%) per annum.

12.      Nigohossian's letter also confirmed that "Rescon Technology Corp. agrees to accept Robert S. Taylor's offer to become a creditor to Rescon through a Convertible Promissory Note at the value of $0.05 per common share of Rescon in an amount not to exceed $10,000....Rescon agrees to accept from Robert S. Taylor whose proposal to satisfy said Note in full by issuance of shares of common stock the value of $0.05 per share. Rescon agrees to register said shares at a subsequent registration promptly." (A copy of this correspondence and the attached Promissory Note is attached hereto as Exhibit A.)

4

13.     Taylor subsequently purchased Notes in the amount of $2000.00 on January 19, 2004; $2000.00 on February 6, 2004; $2000.00 on June 16, 2004; $1000.00 on August 4, 2004; and $4000.00 on November 15, 2004. (Copies of checks evidencing payment are attached hereto as Group Exhibit B.)

14.     On or about October 19, 2004, Rescon apparently entered into an agreement whereby Nayna Networks, Inc. ("Nayna") would be acquired by Rescon via a merger (the "Merger").     Rescon announced that, prior to the closing of the Merger, 32,500,000.00 Rescon common stock would be "reversed split" to reduce the outstanding common stock to approximately 3,400,000.00 shares - thereby greatly increasing the value of Taylor's Notes when converted to stock.  On or about December 17, 2004, Rescon announced that it had completed the reverse stock split in a ratio of 1 to 5.9. It is unclear what the exact reverse split was given Rescon's seemingly contradictory press releases.

15.     After learning of the reverse stock split and proposed merger, Taylor decided to convert his Notes to Rescon stock. After conversion, Taylor would hold more than 300,000 shares of Rescon stock. Accordingly, the value of Taylor's investment had risen to in excess of $100,000.

16.     Beginning in November, 2004, Taylor called Klausgaard to convert his Notes. For the next month, Taylor continued to contact Klausgaard and others at Rescon in a vain attempt to convert the Notes pursuant to his contractual rights. On one of these occasions, Klausgaard informed Taylor that he would send the documents necessary for the conversion that day. It never happened.

17.     Finally, on February 21, 2005, Taylor sent Klausgaard a certified letter, confirming the "many telephone conversations and messages regarding the conversion of my Promissory Notes to shares of stock" and requesting extension of a fifteen month conversion period based on Rescon's failure to deliver his shares to him. (A copy of Taylor's February 21, 2005 letter is attached hereto as Exhibit C.)

18.     On March 25, 2005, after getting no response from Klausgaard or Rescon, Taylor forwarded a certified letter to Naveen S. Bisht ("Bisht"), now President of Nayna/Rescon and to Klausgaard saying, among other things, "This letter again confirms the conversion of my Promissory Notes to shares of stock." Robert's letter goes on to say "My last contact with Henry [Klausgaard] was approximately November 15, 2004. At the time you indicated that you would send me the necessary form to make the conversion, however, I have not received the form nor has anyone returned my telephone messages." (A copy of Taylor's March 25, 2005 letter, which included copies of the Notes showing the $13,000.00 investment and the 300,000 shares of Rescon that should have been converted by Rescon to Taylor is attached hereto as Exhibit D, emphasis in original.)

19.     On April 5, 2005, Taylor faxed a copy of his March 25, 2005 letter to Bisht at Nayna Networks adding the following written text: "As of today, no one has responded to this certified letter. Is there a problem or explanation that no one has notified me of? Can you or some other person who can help me with this conversion." (A copy of this letter is attached as Exhibit E.)

20.     Finally, on April 6, 2005, Klausgaard contacted Taylor to inform him that his Notes would not be converted to Rescon's stock but instead to stock of Northeast, a

6

company that was unknown to Taylor. Klausgaard stated that Northeast stock was traded as "NHVP" on an over the counter exchange.

21.     Unbeknownst to Taylor, in connection with the Merger, all of the assets and liabilities of Rescon were expressly assumed by Northeast pursuant to a "General Assignment and Assumption Agreement" (the "Assumption Agreement"). (A copy of the Assumption Agreement is attached hereto and incorporated herein as Exhibit F).

22.     The Assumption Agreement provides in pertinent part that Northeast "assumes and agrees to faithfully perform and fulfill, all of the Assumed Liabilities in accordance with their respective terms." (Exhibit F, Section 1.1(b)). Pursuant to the Assumption Agreement, Assumed Liabilities are defined in pertinent part as: "(i) all Liabilities reflected in the Rescon Balance Sheet" and "(iii) all Liabilities…arising out of or resulting from: (1) the operation of the Former Rescon Business, as conducted at any time prior to or on the Balance Sheet Date [March 25, 2005] (including any Liability relating to, arising out of or resulting from any act or failure to act by any director, officer, employee, agent or representative (whether or not such act or failure to act is or was within such Person's authority))". (Exhibit F, Sections 1.3 and 4.9).

23.     Further, the Assumption Agreement was signed by Klausgaard in his capacity as both CEO of Rescon Technology Corporation and CEO of Northwest Development Corporation (Exhibit F).

24.     On April 7, 2005, Taylor contacted Bisht at Nayna noting his conversation with Klausgaard stating, among other things, "My Promissory Notes indicated conversion 300,000 shares of Rescon Tech stock. There are several issues involving the outstanding underlying Promissory Notes:

7

1. What are the terms of the merger agreement to finalize these Notes?

2. What are the terms of the reverse stock split for the unissued underlined shares of stock? Since no stock was issued (My requests for their conversion was ignored.), the reversed split should not apply.

3. What is the basis for your not converting the Promissory Notes to Rescon Tech stock?

It appears from the above three items that the conversion of my Promissory Note should result in the issuing to me of 300,000 of Rescon Tech stock or Nayna Networks, Inc. stock when issued." A copy of this letter was faxed to Bisht and also to Klausgaard. (A copy is attached hereto as Exhibit G).

25. On or about April 8, 2005, Taylor called Klausgaard again, this time actually reaching him. Klausgaard informed Taylor that he should have received "five letters" relating to the merger. Taylor never received any of these letters, and believes that these letters were never sent.

26. On April 19, 2005, Taylor wrote to Klausgaard detailing the conversation of April 8, 2005 and requesting, among other things, "a fax of these five communications plus any additional information clarifying how the Promissory Notes are being handled. Also, kindly inform me of the number of shares to be allocated to my account including the method of calculation to determine the number of shares." (A copy is attached hereto as Exhibit H).

27. After Taylor received no response to his letter, he refaxed his April 19, 2005 letter to Klausgaard on May 3, 2005, sent the letter via certified mail on May 11, 2005 and refaxed the letter yet again to Klausgaard on May 11, 2005. Since that time, Taylor has received no correspondence from any of the Defendants.

28.     On or about June 10, 2005, Taylor's counsel sent letters to Rescon, Nayna and Northeast demanding information regarding Taylor's investment and turnover of the Taylors' stock. (A copy of this letter is attached as Exhibit I).

29.     As of the date of filing, no response to the Taylor's counsel's letter has been received.

30.     As a result of the Defendants' independent and/or collective actions, they have wrongly defrauded Taylor and taken the retirement funds that Taylor used to purchase the Notes.

31.     On information and belief, Rescon and/or the other Defendants obtained funds via Convertible Promissory Notes from many other individuals and also may have refused to repay or convert the Convertible Promissory Notes of these other individuals.

32.     Rescon, by targeting, contacting and soliciting Taylor over the telephone, purposefully availed itself of the privilege of conducting business in Illinois. Accordingly, jurisdiction over Rescon is appropriate pursuant to 735 ILCS 5/2-209(14)(b)(4).

33.     Northeast has taken on the rights and obligations of Rescon pursuant to the Assumption Agreement, and therefore, Rescon's contacts with Illinois can be attributed to Northeast for purposes of personal jurisdiction. As such, jurisdiction of Northeast is appropriate pursuant to 735 ILCS 5/2-209(14)(b)(4).

34.     Defendants cannot avoid jurisdiction based on the fact that the parties' relationship is based on telephone, written and facsimile communications rather than physical presence in Illinois.

## COUNT I
## VIOLATION OF SECTION 10B OF THE SECURITIES EXCHANGE ACT 1934 AND RULE 106-5
### (Against all Defendants)

35.     Taylor reincorporates and realleges Paragraphs 1-34 as if more fully alleged herein.

36.     During the period December 2003 through April 2005, Rescon and the other Defendants, in connection with the purchase and sale of securities directly or indirectly, by use of Interstate Commerce and of the use or the Facilities of the National Securities Exchange, employed devices, schemes or methods to defraud and made untrue statements of material fact or omitted to state material facts necessary in order to make the decisions, in light of the circumstances under which they are made, not misleading, or engaged in acts or practices which operated as a fraud or deceit upon Taylor.

37.     Rescon and Klausgaard specifically informed Taylor that the Notes could, and in fact would, be converted to Rescon common stock upon demand. Taylor made this demand many times, yet Rescon and Klausgaard refused to convert the Notes or to communicate with Taylor.

38.     Northeast, Individually and as Successor to Rescon, participated in the scheme to defraud Taylor and as the successor in interest to Rescon, owns and/or retains Taylor's shares and funds.

39.     These representations and/or omissions referenced herein are material because Taylor's investment was promised on the "safety" of the Notes and the potential upside of the convertibility factor of the Notes.

40.     Taylor relied upon the Defendants' representations when he agreed to loan money to Rescon in exchange for the Promissory Notes. Taylor was injured as a direct

result of the Defendants' misrepresentations and/or omissions of material fact as described herein.

41.     Communications regarding Taylor's investments were made through the instrumentality of the Interstate Commerce, including telephones, facsimile and the United States Mail.

42.     The Defendants knew or should have known that their representations and/or omissions to Taylor regarding their Promissory Notes were falsely misleading.

WHEREFORE, Plaintiff, Robert S. Taylor respectfully requests that judgment be entered in his favor and against Northeast Development Corporation, Individually and as Successor to Rescon Technology Corporation and Hendrick Klausgaard for (a) an amount in excess of $150,000.00; (b) exemplary damages in excess of $450,000 and (c) interest and costs in bringing this action.

**COUNT II**
**VIOLATION OF THE ILLINOIS DECEPTIVE BUSINESS PRACTICES**
**ACT (AGAINST KLAUSGAARD)**

43.     Taylor reincorporates and realleges Paragraphs 1-34 as if more fully alleged herein.

44.     Rescon and more specifically, Klausgaard, represented to Taylor that his Notes could be converted to Rescon common stock upon demand.

45.     Neither Rescon nor Klausgaard indicated that, in fact, they had no intent to pay Taylor back the money that he had invested or to convert the Notes to Rescon shares.

46.     Rescon and more specifically, Klausgaard, knew that their representations regarding Taylor's' investment were false and misleading.

47.     Rescon and more specifically Klausgaard, intended for Taylor to rely upon the representations made to him in order to secure his investment in Rescon.

48.     Had Taylor known that the investment was nothing more than a scheme by these Defendants, he would not have purchased the Notes.

49.     Accordingly, Taylor was injured by Rescon's, and more specifically Klausgaard's, fraudulent misrepresentations and/or omissions.

WHEREFORE, Plaintiff, Robert S. Taylor respectfully requests that judgment be entered in his favor and against Hendrick Klausgaard for (a) an amount in excess of $150,000.00; (b) exemplary damages in excess of $450,000 and (c) interest and costs in bringing this action.

## COUNT III
## BREACH OF CONTRACT
### (Against Northeast)

50.     Taylor reincorporates and realleges Paragraphs 1-34 as if more fully alleged herein.

51.     Taylor and Rescon contracted with one another, the terms of which specified that Taylor would loan Rescon funds in exchange for the interest bearing Notes and the right to convert the Notes to Rescon stock upon demand. (See Exhibits A and B).

52.     Rescon later entered into a contract with Northeast entitled "General Assignment and Assumption Agreement". (Exhibit F). Subject to the terms of the Assumption Agreement, Northeast agreed to assume and fulfill all of Rescon's Liabilities. (Exhibit F, Section 1.1(b)). The contract between Taylor and Rescon was included in Northeast's Assumed Liabilities. (Exhibit F)

12

53.     Northeast, by its own public representations, successor entities to Rescon and, as such, have possession and control over Taylor's stock and his funds.

54.     Taylor fully performed under the contract by purchasing the Notes.

55.     Northeast, based upon the Assumption Agreement, breached its contractual obligations to Taylor by failing to convert Taylor's Notes to Rescon stock upon demand.

56.     As a result of Northeast's breach, Taylor has been damaged. Specifically, Taylor has been unable to timely convert his Notes, thereby losing the investment element of the Notes.

WHEREFORE, Plaintiff, Robert S. Taylor respectfully requests that judgment be entered in his favor and against Northeast Development Corporation, Individually and as Successor to Rescon Technology Corporation for (a) an amount in excess of $150,000.00; (b) exemplary damages in excess of $450,000 and (c) interest and costs in bringing this action.

## COUNT IV
## CONVERSION
### (Against Northeast)

57.     Taylor reincorporates and realleges Paragraphs 1-34 as if more fully alleged herein.

58.     Northeast holds Taylor's Notes and/or stock.

59.     Demand has been made upon Northeast for conversion of the Notes to Rescon stock or for return and turnover of Taylor's funds.

60.     Northeast has refused to turn over Taylor's property with the intent to permanently keep Taylor's property.

13

WHEREFORE, Plaintiff, Robert S. Taylor respectfully requests that judgment be entered in his favor and against Northeast Development Corporation, Individually and as Successor to Rescon Technology Corporation for (a) an amount in excess of $150,000.00; (b) exemplary damages in excess of $450,000 and (c) interest and costs in bringing this action.

### COUNT V
### COMMON LAW FRAUD
### (Against all Defendants)

61.     Taylor reincorporates and realleges Paragraphs 1-34 as if more fully alleged herein.

62.     Rescon and Klausgaard represented to Taylor that his Notes could be converted to Rescon common stock upon demand.

63.     Neither Rescon nor Klausgaard indicated that, in fact, they had no intent to pay back the money that Taylor had invested.

64.     Rescon and more specifically, Klausgaard, knew that their representations to Taylor regarding his investment were false and misleading.

65.     Rescon and more specifically Klausgaard intended for Taylor to rely upon the representations made to Taylor, which Taylor in fact did.

66.     Had Taylor known that the investment was nothing more than a scheme by these Defendants, he would not have purchased the Notes.

67.     Accordingly, Taylor has been injured by Rescon's, and more specifically Klausgaard's, fraudulent misrepresentations and admissions.

WHEREFORE, Plaintiff, Robert S. Taylor respectfully requests that judgment be entered in his favor and against Hendrick Klausgaard for (a) an amount in excess of

$150,000.00; (b) exemplary damages in excess of $450,000 and (c) interest and costs in bringing this action.

Respectfully submitted,

ROBERT S. TAYLOR

/s/ Trent P. Cornell
One of His Attorneys

Trent P. Cornell
Whitney B. Mayster
Stahl Cowen Crowley LLC
55 West Monroe Street
Ste. 1200
Chicago, Illinois 60603
(312) 641-0060
Firm I.D.: 38642

# EXHIBIT A

# RESCON Technology Corporation
A Publicly Held Company OTCBB:RCTC

12-10-03

ATTN:
JOHN BERLIN
AGREEMENT WAS
→ $ 2000.00 NOT
$ 5000.00

Bob Taylor

12-3-2003

Robert S. Taylor
319 N. Oak Park Av.
Oak Park, IL 60302

Re: Convertible Debenture Option

Dear Robert S. Taylor,

After 5 days from the date of this Note, and prior to fifteen months from the date of this
Note, Rescon Technology Corp. agrees to accept Robert S. Taylor's offer to become a
creditor to Rescon through a Convertible Promissory Note at the value of $0.05 per
common share of Rescon in an amount not to exceed ten thousand dollars
($10,000.00). Robert S. Taylor may choose the amount in increments of five thousand
dollars ($5,000.00). After 5 days from the date of this Note, and prior to fifteen months
from the date of this Note, Rescon agrees to accept from Robert S. Taylor his proposal to
satisfy said note in full by issuance of shares of common stock at the value of $0.05 per
share. Rescon agrees to register said shares in a subsequent registration promptly.

Yours truly,

Christian Nigohossian, President

**EXHIBIT**

tabbies

A

# RESCON Technology Corporation

A Publicly Held Company OTCBB:RCTC



THIS SECURITY HAS BEEN ACQUIRED FOR INVESTMENT AND HAS NOT BEEN REGISTERED UNDER THE
SECURITIES ACT OF 1933, AS AMENDED OR THE SECURITIES LAW OF ANY STATE AND MAY NOT BE SOLD,
TRANSFERRED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR AN EXEMPTION
THEREFROM.

**PROMISSORY NOTE**

Date: December 3, 2003

*CHECK #437C*
*12-17-04*

Principal Sum:  $2,000.00

*40,000 SHARES*

**OBLIGATION AND PAYMENT**

    **FOR VALUE RECEIVED**, receipt of which is acknowledged, Rescon Technology, of
Plainview, New York, promises to pay the order of Robert S. Taylor, the principal sum of
Two Thousand ($2,000.00) Dollars, together with interest at the rate of eight (8%) percent
per annum on the unpaid balance. Payment will be made upon demand two years after the
issuance of this Note. Rescon Technology shall have the right to pre-pay this Note, in
whole or in part, at any time without premium or penalty. Installments shall be paid to
Robert S. Taylor 319 N. Oak Park Av. Oak Park, IL 60302 or at any other place that the
holder of this Note designates in writing. Interest shall be computed monthly.
Installments shall be applied first toward the payment of interest and costs of collection
provided for in this Note; the balance, if any, will be applied to the payment of the
principal.

**STOCK PAYMENT OPTION**

    After five (5) days from the date of this Note, and prior to fifteen (15) months
from the date of this Note, Rescon agrees to accept from Robert S. Taylor his proposal to
satisfy this Note in full or any part thereof, by issuance of shares (defined below) of
common stock of Rescon at the value of $0.05 per share. Rescon shall issue the shares in
the amount requested by Robert S. Taylor, in full satisfaction of the Note.
    Rescon agrees to register the shares in any subsequent registration promptly upon
receiving the notice from Robert S. Taylor of his election to satisfy this note by
receiving shares of Rescon. Subsequent to fifteen (15) months after the date of this Note,
Rescon may accept or reject Robert S. Taylor's proposal to satisfy the Note by delivery of
shares.

**WAIVER**

    The undersigned waives demand, presentment, protest, notice of dishonor or non-
payment of this Note, and all other actions or notices in connection with the delivery,
acceptance, performance, default, or enforcement of the payment of this Note. The
undersigned agrees to pay all costs of collection when incurred, including holder's
attorneys' fees and costs, and to perform and comply with each of the covenants and
conditions contained in any agreement executed in connection herewith, including but not
limited to mortgages, liens, security agreements, and financing statements.



# RESCON Technology Corporation

A Publicly Held Company OTCBB:RCTC

## DEFAULT

If the undersigned should default in the payment of principal, or interest when due in accordance with the terms listed herein, or if the undersigned should fail to perform or comply with any term, covenant, or condition of any agreement executed in connection with this Note, or any other agreement executed in connection with this Note, or any other agreement with, and such failure continues for seven (7) days after the holder gives written notice to the undersigned at the address below, reasonably identifying the failure, it is agreed that the holder or holders of this Note may, without notice, declare the unpaid balance of the principal sum and any interest accrued on it, at once due and payable at the place of payment listed above. Notice shall be deemed to have been given when personally delivered or when deposited in the United States mail addressed to the undersigned with proper postage affixed. Interest shall continue to accrue on the unpaid principal balance at the rate established above regardless of any acceleration of the debt pursuant to the terms of this paragraph.

## BENEFIT

This Note shall insure to the benefit of Robert S. Taylor and his successors and assigns, it shall be binding upon the undersigned, its respective legal representatives, successors and assignees.

The undersigned agrees that it will not assert any claim it may have against as a defense against payment on this Note, or as a setoff against amounts owed pursuant to the terms of this Note. The undersigned agree that any litigation with respect to or arising of the Note shall, at Rescon' sole discretion and election, be conducted in the Pennsylvania Courts seated in Pennsylvania; the undersigned hereby consents to the personal jurisdiction of such courts and waives any objection it may have to the laying of venue of such litigation.

## REPORTS

The undersigned acknowledges he has had an opportunity to review any or all of the companies quarterly reports and financial statements and may review or request such reports for so long as it holds this Note or shares issued in payment therefore.

## USE OF PROCEEDS

The proceeds of the indebtedness represented by this Note will be used for capital expenditures, working capital and other general corporate purposes of Rescon.

## DISCLOSURE

Rescon has not, in writing or orally, to the holder of this Note or of any of the other similar notes being issued contemporaneously with this Note, made any untrue statements of a material fact or omitted to state any material fact necessary to make the statements made, in light of the circumstances in which they were made, not misleading.



**RESCON Technology Corporation**
A Publicly Held Company OTCBB:RCTC

## INVESTOR STATUS

The holder of this Note, by acceptance hereof, confirms that: (i) he is an "Accredited Investor" as defined in Rule 501 of Regulation D under the United States Securities Act of 1933, as amended; (ii) he possesses such knowledge and experience in financial and business matters so that the holder is capable of evaluating the risks and merits of an investment in this Note and in Rescon, Inc.; (iii) he is able to bear the economic risks of an investment in Rescon and could afford a complete loss of such investment, and (iv) he has had an opportunity to ask questions and received answers regarding Rescon. Inc. and the offering and sale of the note and has been furnished with all information requested relating to Rescon and the offering and sale of the Note.

## OTHER PROVISIONS

No delay or omission on the part of the holder in the exercise of any right hereunder, or under any agreement securing this Note, shall operate as a waiver of such right or any other right, a waiver on any one occasion shall not be construed as a bar to or waiver of any such right on any future occasion.
The undersigned agrees that this Note and the rights and obligations of all parties hereunder shall be governed by and construed under the laws of the State of New Illinois. In the event any provision hereof is in conflict with any statute or rule of law in the State of Illinois, or is otherwise unenforceable for any reason whatsoever, then such provision shall be deemed severable from this Note, or enforceable to the maximum extent permitted by law, as the case may be, and the same shall not invalidate any other provisions hereof.

**In Witness Whereof**, this Note has been executed on the day and year above written.

Robert S. Taylor

By: Robert S. Taylor
    319 N. Oak Park Av.
    Oak Park, IL 60302

RESCON TECHNOLOGY CORPORATION

By: Christian Nigohossian, President
    1500 Market Street 12th Fl. E.Tower
    Philadelphia, PA 19102



# EXHIBIT B



ROBERT S TAYLOR
STACIA A TAYLOR
318 N. OAK PARK AVE UNIT E
OAK PARK, IL 60302

4376

DEC 17 2003

Pay to the Order of  RESCON TECHNOLOGY CORPORATION    $ 2000 00

TWO THOUSAND & 00/100                                 Dollars

**US bank**
Five Star Service Guaranteed

For  $0,000 IN RCTC                          Robert S. Taylor

⑆071904779⑆    0706853011⑆04376    ⑈000200000⑈



Resco Technology

EXHIBIT
B



STACIA A TAYLOR
31 N OAK PARK AVE UNIT E
OAK PARK, IL 60302

JAN 15, 2004

Pay to the
Order of  RECCON TECHNOLOGY CORP.         $ 2000.00

Two Thousand $ 00/100 —————————————— Dollars

USbank
The Five Star Service Guarantee

For 40,000 SHs RCTC          Robert S. Taylor

⑆071904779⑆  070685301⑈01401  ⑈000000700000⑈

0214370245
01202004
0710-0030-1
ENT=1523  TRC=1569  PK=06

991000022 01232004 0698
S/T 031 ID 1B PKT 94
ACCT 25022101120020
7714245663

011000138
FLEET-MA MALDEN, MA 27
6091 177 32 90 01/22/04
0704224357



4410



ROBERT S. TAYLOR
STACIA A. TAYLOR
912 N. OAK PARK AVE UNIT E
OAK PARK, IL 60302

June 16, 2004

Pay to the Order of  Rescon Technology Corporation   $ 2,000⁰⁰

Two Thousand & ⁰⁰/₁₀₀   Dollars

USbank
Five Star Service Guarantee

For _____

⑈071904779⑈  0706853011041492 ⑈00002000⑈

PAY TO THE ORDER OF
FLEET BANK
PHILADELPHIA, PA 19103-2808
▼ 02120039 ▲
FOR DEPOSIT ONLY
RESCON TECHNOLOGY CORP
9481521567

JUN 23 00



ROBERT B TAYLOR
STACIA A TAYLOR
319 N. OAK PARK AVE UNIT E
OAK PARK, IL 60302

4566

70-477/719 2312

Nov 15, 2004

Pay to the
Order of   RESON TECHNOLOGY CORPORATION    $ 4000.00

FOUR THOUSAND & 00/100 ———————— Dollars

US bank
Five Star Service Guaranteed   usbank.com

For   900000 SH RCTC @ 0.05/SHARE    [signature]

⑆071904779⑆   070685301⑈04566   ⑆0000400000⑈

# EXHIBIT C

**ROBERT S. TAYLOR**
**319 NORTH OAK PARK AVENUE, E**
**OAK PARK, IL 60302**
**708/848-4369**
**FAX 708/383-2782**

February 21, 2005

Rescon Technology Corporation
1500 Market Street
12th Floor, East Tower
Philadelphia, PA 19102

RE: Conversion of Promissory Notes to Shares of Stock

Attention: Henrick Klausgaard

Dear Henry:

This letter confirms our many telephone conversations and messages regarding the conversion of my promissory notes to shares of stock.

Due to numerous delays in not converting my notes to shares, I am requesting that the 15-month maximum to complete the conversion be extended.

Please verify this extension by signing below and mailing or faxing this confirming letter back.

Yours truly,

*Robert S. Taylor*
Robert S. Taylor

Faxed: February 21, 2005
To: 215/665-5756

Date:_____ By:_____
                Henrick Klausgaard

EXHIBIT
C

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | | |
|---|---|---|
| Postage | $ | 0.37 |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 4.42 |

UNIT ID: 0301

Postmark Here

Clerk: DMS1HB

02/22/05

Sent To  HENRICK  KLAUSGAARD
Street, Apt. No.; 1500 MARKET STREET
or PO Box No. 12TH FLOOR, EST TOWER
City, State, ZIP+4  PHILADELPHIA  PA  19102

PS Form 3800, June 2002    See Reverse for Instructions

7004 2510 0003 3421 6352

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

HENRICK KLAUSGAARD
% RESONTECH CORP.
1500 MARKET STREET
12TH FL, EAST TOWER
PHILADELPHIA PA 19102

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
                                     2/25

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer f      7004 2510 0003 3421 6352

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# EXHIBIT D

**ROBERT S. TAYLOR**
**319 NORTH OAK PARK AVENUE, E**
**OAK PARK, IL 60302**
**708/848-4369**
**FAX 708/383-2782**

March 25, 2005

Rescon Technology Corporation
1500 Market Street
12th Floor, East Tower
Philadelphia, PA 19102

RE: Conversion of Promissory Notes to Shares of Stock
and Resignation of Henrick Klausgaard

Attn: Henrick Klausgaard or Naveen S. Bisht

This letter <u>again</u> confirms the conversion of my promissory notes to shares of stock.

My last contact with Henry was approximately 11/15/04. At that time he indicated that he would send me the necessary form to make the conversion. However, I have not received the form, nor has anyone returned my telephone messages.

<u>Promissory Notes at Conversion Rate</u>

| | | | | |
|---|---|---|---|---|
| 12-17-03 | $2,000.00 | @ $.05/shr. | = | 40,000 shrs. |
| 1-19-04 | $2,000.00 | @ $.05/shr. | = | 40,000 shrs. |
| 2-6-04 | $2,000.00 | @ $.05/shr. | = | 40,000 shrs. |
| 6-16-04 | $2,000.00 | @ $.03/shr. | = | 66,667 shrs. |
| 8-14-04 | $1,000.00 | @ $.03/shr. | = | 33,333 shrs. |
| 11-15-04 | $4,000.00 | @ $.05/shr. | = | 40,000 shrs. |
| Total | $13,000.00 | | | 300,000 shrs. |

<u>Advise the following</u>

1. Name and telephone number of person who will be my contact to complete the conversion.
2. <u>Approximate</u> date when the shares of stock will be forwarded.
3. Conversion stock value of my 3,000 shares of "speed of thought."

Very truly yours,

Robert S. Taylor
Attachments (6)


EXHIBIT
D

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>x ☐ Agent ☐ Addressee<br>B. Received by ( *Printed Name*)    C. Date of Delivery<br>a. Hester |
| 1. Article Addressed to:<br><br>NAVEEN S, BISHT<br>9/0 RESSON TECH CORP<br>1500 MARKET STREET<br>12TH FLOOR, EAST TOWER<br>PHILADELPHIA PA 19/02 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>Rec'd 4/1/05 |
| | 3. Service Type<br>☐ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. |
| | 4. Restricted Delivery? (*Extra Fee*)    ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7004 2510 0003 3421 7236 |

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

## U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

# OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | 0.83 |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 4.88 |

UNIT ID: 0301

Postmark Here

Clerk: KYBB2D

03/25/05

Sent To
NAVEEN S. BISHT, c/o RESCON TECH CORP
Street, Apt. No.; 1500 MARKET STREET
or PO Box No. 12TH FLOOR, EAST TOWER
City, State, ZIP+4 PHILADELPHIA PA 19102

PS Form 3800, June 2002          See Reverse for Instructions

7004 2510 0003 3421 7236

---

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

NAVEEN S. BISHT
c/o RESCON TECH CORP
1500 MARKET STREET
12TH FLOOR, EAST TOWER
PHILADELPHIA PA 19102

## COMPLETE THIS SECTION ON DELIVERY

A. Signature
X J. Wesfe                  ☐ Agent
                            ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery
J. Hester

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

   Rec'd. 4/1/05

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)       ☐ Yes

2. Article Number
(Transfer from service label)
7004 2510 0003 3421 7236

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

# EXHIBIT E

**ROBERT S. TAYLOR**
**319 NORTH OAK PARK AVENUE, E**
**OAK PARK, IL 60302**
**708/848-4369**
**FAX 708/383-2782**

*[handwritten: 4-5-05]*
*[handwritten: FAX To: NAVEEN S. BISH %a NAYNA NETWOR FAX 1-408-956-B73]*

March 25, 2005

Rescon Technology Corporation
1500 Market Street
12th Floor, East Tower
Philadelphia, PA 19102

*[handwritten: AS OF TODAY, NO ONE HAS RESPONDED TO THIS CERTIFIED LETTER. IS THERE A PROBLEM OR EXPLANATION THAT NO ONE HAS NOTIFIED ME OF? CAN YOU OR SOMEOTHER PERSON WH CAN HELP ME WITH THIS CONVERSIO]*

RE: Conversion of Promissory Notes to Shares of Stock
   and Resignation of Henrick Klausgaard

Attn: Henrick Klausgaard or Naveen S. Bisht

This letter <u>again</u> confirms the conversion of my promissory notes to shares of stock.

My last contact with Henry was approximately 11/15/04. At that time he indicated that he would send me the necessary form to make the conversion. However, I have not received the form, nor has anyone returned my telephone messages.

*[handwritten signature: Robt S Tay]*

### Promissory Notes at Conversion Rate

| | | | | |
|---|---|---|---|---|
| 12-17-03 | $2,000.00 | @ $.05/shr. | = | 40,000 shrs. |
| 1-19-04 | $2,000.00 | @ $.05/shr. | = | 40,000 shrs. |
| 2-6-04 | $2,000.00 | @ $.05/shr. | = | 40,000 shrs. |
| 6-16-04 | $2,000.00 | @ $.03/shr. | = | 66,667 shrs. |
| 8-14-04 | $1,000.00 | @ $.03/shr. | = | 33,333 shrs. |
| 11-15-04 | <u>$4,000.00</u> | @ $.05/shr. | = | <u>40,000 shrs.</u> |
| Total | $13,000.00 | | | 300,000 shrs. |

### Advise the following

1. Name and telephone number of person who will be my contact to complete the conversion.
2. <u>Approximate</u> date when the shares of stock will be forwarded.
3. Conversion stock value of my 3,000 shares of "speed of thought."

Very truly yours,

*[signature: Robert S. Taylor]*
Robert S. Taylor
Attachments (6) *[handwritten: WILL MAIL UPON REQUEST]*

**EXHIBIT**
*[handwritten: E]*

# EXHIBIT F

## GENERAL ASSIGNMENT AND ASSUMPTION AGREEMENT

This General Assignment and Assumption Agreement (this "Agreement") is entered into on MARCH __, 2005 between Rescon Technology Corporation, a Delaware corporation ("Rescon"), and Northeast Development Corporation., a Nevada corporation ("Northeast"). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in Article IV hereof.

### RECITALS

WHEREAS, Rescon hereby and by certain other instruments of even date herewith transfers or will transfer to Northeast effective as of the date hereof, certain assets owned by Rescon in accordance with this Agreement.

WHEREAS, it is further intended between the parties that Northeast assume certain of the liabilities related to the business owned and operated by Rescon as of March 23, 2005 (the "Former Rescon Business"), as provided in this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth below, the parties hereto agree as follows:

### ARTICLE I

### CONTRIBUTION AND ASSUMPTION

Section 1.1    Contribution of Assets and Assumption of Liabilities.

(a)    Transfer of Assets. Effective as of the date hereof, Rescon hereby assigns, transfers, conveys and delivers (or will cause any applicable Subsidiary to assign, transfer, convey and deliver) to Northeast, and Northeast hereby accepts from Rescon, all of Rescon's right, title and interest in the Purchased Assets.

(b)    Assumption of Liabilities. Effective as of the date hereof, Northeast hereby assumes and agrees faithfully to perform and fulfill, all of the Assumed Liabilities in accordance with their respective terms.

(c)    Misallocated Assets. In the event that at any time or from time to time (whether prior to, on or after the date hereof) any party hereto or any of its affiliates, shall receive or otherwise possess any Asset that is allocated to any other Person pursuant to this Agreement, such party shall promptly transfer, or cause to be transferred, such Asset to the Person so entitled thereto. Prior to any such transfer, the Person receiving or possessing such Asset shall hold such Asset in trust for any such other Person.

Section 1.2    Purchased Assets.

(a)    Purchased Assets. For purposes of this Agreement, "Purchased Assets" shall mean (without duplication) the following Assets:

(i)    all Assets reflected in the Rescon Balance Sheet, subject to any dispositions of such Assets subsequent to the Balance Sheet Date, but prior to the date



EXHIBIT
F

hereof;

(ii)     all Assets that have been written off, expensed or fully depreciated (that, had they not been written off, expensed or fully depreciated, would have been reflected in the Rescon Balance Sheet in accordance with the principles and accounting policies under which the Rescon Balance Sheet was prepared;

(iii)     all Assets that are used primarily by the Former Rescon Business at the Balance Sheet Date but are not reflected in the Rescon Balance Sheet due to mistake, omission or otherwise; provided, however, that no Asset shall be a Purchased Asset requiring any transfer by Rescon unless Northeast shall have, on or before the first anniversary of the date hereof, given Rescon notice that such Asset is a Purchased Asset;

(iv)     all contracts, commitments or obligations entered into by Rescon on or prior to the Balance Sheet Date or by which Rescon or any of the Purchased Assets is bound, other than the contracts commitments and obligations listed or described on Schedule 1.2(b);

(v)     to the extent permitted by law, all rights under any of Rescon's insurance policies in force on or prior to the Balance Sheet Date; and

(vi)     all Assets listed or described on Schedule 1.2(a)(vi).

(b)     Excluded Assets. For the purposes of this Agreement, "Excluded Assets" shall mean all Assets acquired after the Balance Sheet Date and the Assets listed or described on Schedule 1.2(b).

Section 1.3     Assumed Liabilities.

(a)     Assumed Liabilities. For the purposes of this Agreement, "Assumed Liabilities" shall mean (without duplication) the following Liabilities:

(i)     all Liabilities reflected in the Rescon Balance Sheet, subject to any discharge of such Liabilities subsequent to the Balance Sheet Date, but prior to the date hereof;

(ii)     all Liabilities that are related primarily to the Former Rescon Business at the Balance Sheet Date but are not reflected in the Rescon Balance Sheet due to mistake, omission or otherwise; provided, however, that no Liability shall be considered as an Assumed Liability unless Rescon, on or before the first anniversary of the date hereof, has given Northeast notice that such Liability is an Assumed Liability;

(iii)     all Liabilities (including any and all taxes), whether arising before, on or after the date hereof, primarily relating to, arising out of or resulting from:

(1)     the operation of the Former Rescon Business, as conducted at any time prior to or on the Balance Sheet Date (including any Liability relating to, arising out of or resulting from any act or failure to act by any director,

officer, employee, agent or representative (whether or not such act or failure to act is or was within such Person's authority));

(2)     the operation of any business conducted by Northeast or any of its affiliates at any time after the date hereof (including any Liability relating to, arising out of or resulting from any act or failure to act by any director, officer, employee, agent or representative (whether or not such act or failure to act is or was within such Person's authority)); or

(3)     any Purchased Assets or Assumed Liabilities;

(iv)     all Liabilities relating to, arising out of or resulting from any of the terminated, divested or discontinued businesses and operations of Rescon as of the date hereof; and

(v)     all Liabilities listed or described on Schedule 1.3(a)(v).

(b)     Excluded Liabilities. For the purposes of this Agreement, "Excluded Liabilities" shall mean all Liabilities listed or described in Schedule 1.3(b).

Section 1.4     Methods of Transfer and Assumption.

(a)     Mistaken Assignments and Assumptions. In addition to those transfers and assumptions accurately identified and designated by the parties to take place but which the parties are not able to effect as of the date hereof, there may exist (i) Assets that the parties discover were, contrary to the agreements between the parties, by mistake, omission or otherwise transferred to Northeast or (ii) Liabilities that the parties discover were, contrary to the agreements between the parties, by mistake, omission or otherwise assumed by Northeast. The parties shall cooperate in good faith to effect the transfer or re-transfer of such Assets, and/or the assumption or re-assumption of such Liabilities, to or by the appropriate party and shall not use the determination that remedial actions need to be taken to alter the original intent of the parties hereto with respect to the Assets to be transferred to or Liabilities to be assumed by Northeast. Each party shall reimburse the other or make other financial adjustments (e.g., without limitation, cash reserves) or other adjustments to remedy any mistakes or omissions relating to any of the Assets transferred hereby or any of the Liabilities assumed hereby.

(b)     Documents Relating to Other Transfers of Assets and Assumption of Liabilities. In furtherance of the assignment, transfer and conveyance of Purchased Assets and the assumption of Assumed Liabilities set forth in Sections 1.2(a) and 1.3 (a), simultaneously with the execution and delivery hereof or as promptly as practicable thereafter, (i) Rescon shall execute and deliver such bills of sale, stock powers, certificates of title, assignments of contracts and other instruments of transfer, conveyance and assignment as and to the extent necessary to evidence the transfer, conveyance and assignment of all of Rescon's right, title and interest in and to the Purchased Assets to Northeast and (ii) Northeast shall execute and deliver to Rescon such assumptions of contracts and other instruments of assumption as and to the extent necessary to evidence the valid and effective assumption of the Assumed Liabilities by Northeast.

Section 1.5    Governmental Approvals and Consents.

(a)    Transfer In Violation of Laws. If and to the extent that the valid, complete and perfected transfer assignment or novation to Northeast of any Purchased Assets and Assumed Liabilities would be a violation of applicable laws or require any consent or Governmental Approval in connection with the transactions contemplated hereby, then, unless Rescon shall otherwise determine, the transfer, assignment or novation to or from Northeast, as the case may be, of such Purchased Assets, shall be automatically deemed deferred and any such purported transfer, assignment or novation shall be null and void until such time as all legal impediments are removed and/or such consents or Governmental Approvals have been obtained. Notwithstanding the foregoing, such Asset shall still be considered a Purchased Asset for purposes of determining whether any Liability is an Assumed Liability; provided, however, that if such covenants or Governmental Approvals have not been obtained within six months of the date hereof, the parties will use their reasonable commercial efforts to achieve an alternative solution in accordance with the parties' intentions.

(b)    Transfers Not Consummated Prior to Separation Date. If the transfer, assignment or novation of any Assets intended to be transferred or assigned hereunder is not consummated on the date hereof, whether as a result of the provisions of Section 1.5(a) or for any other reason, then the Person retaining such Asset shall thereafter hold such Asset for the use and benefit, insofar as reasonably possible, of the Person entitled thereto (at the expense of the Person entitled thereto). In addition, the Person retaining such Asset shall take such other actions as may be reasonably requested by the Person to whom such Asset is to be transferred in order to place such Person, insofar as reasonably possible, in the same position as if such Asset had been transferred as contemplated hereby and so that all the benefits and burdens relating to such Purchased Asset, including possession, use, risk of loss, potential for gain, and dominion, control and command over such Assets, are to inure from and after the date hereof to Northeast. If and when the consents and/or Governmental Approvals, the absence of which caused the deferral of transfer of any Asset pursuant to Section 1.5 (a), are obtained, the transfer of the applicable Asset shall be effected in accordance with the terms of this Agreement and/or such other applicable Ancillary Agreement.

(c)    Expenses. The Person retaining an Asset due to the deferral of the transfer of such Asset shall not be obligated, in connection with the foregoing, to expend any money unless the necessary funds are advanced by the Person entitled to the Asset, other than reasonable out-of-pocket expenses, attorneys' fees and recording or similar fees, all of which shall be promptly reimbursed by the Person entitled to such Asset.

Section 1.6    Nonrecurring Costs and Expenses. Notwithstanding anything herein to the contrary, any nonrecurring costs and expenses incurred by the parties hereto to effect the transactions contemplated hereby which are not allocated pursuant to the terms of this Agreement shall be the responsibility of the party which incurs such costs and expenses.

Section 1.7    Novation of Assumed Northeast Liabilities.

(a)    Reasonable Commercial Efforts. Each of Rescon and Northeast, at the request of the other, shall use its reasonable commercial efforts to obtain, or to cause

to be obtained, any consent, substitution, approval or amendment required to novate (including with respect to any federal government contract) or assign all rights and obligations under agreements, leases, licenses and other obligations or Liabilities of any nature whatsoever that constitute Assumed Liabilities or to obtain in writing the unconditional release of all parties to such arrangements other than Northeast and its Affiliated Companies, so that, in any such case, Northeast will be solely responsible for such Liabilities; provided, however, that neither Rescon, Northeast nor their Affiliated Companies shall be obligated to pay any consideration therefor to any third party from whom such consents, approvals, substitutions and amendments are requested.

(b)    Inability to Obtain Novation. If Rescon or Northeast is unable to obtain, or to cause to be obtained, any such required consent, approval, release, substitution or amendment, Rescon shall continue to be bound by such agreements, leases, licenses and other obligations and, unless not permitted by law or the terms thereof (except to the extent expressly set forth in this Agreement), Northeast shall, as agent or subcontractor for Rescon or such other Person, as the case may be, pay, perform and discharge fully, or cause to be paid, transferred or discharged all the obligations or other Liabilities of Rescon or such other Person, as the case may be, thereunder from and after the date hereof. Rescon shall, without further consideration, pay and remit, or cause to be paid or remitted, to Northeast or its appropriate Affiliated Company promptly all money, rights and other consideration received by it or any Affiliated Company in respect of such performance (unless any such consideration is an Excluded Asset). If and when any such consent, approval, release, substitution or amendment shall be obtained or such agreement, lease, license or other rights or obligations shall otherwise become assignable or able to be novated, Rescon shall thereafter assign, or cause to be assigned, all its rights, obligations and other Liabilities thereunder or any rights or obligations of any Affiliated Company to Northeast without payment of further consideration and Northeast shall, without the payment of any further consideration, assume such rights and obligations.

## ARTICLE II

## IMDEMNIFICATION

Section 2.1    Indemnification. From and after the date hereof, Northeast shall indemnify, defend and hold Buyer and its respective affiliates, officers, directors, employees, agents and representatives (collectively, the "Rescon Indemnified Parties") harmless from and against all claims, losses, liabilities, costs, expenses, obligations and damages, including without limitation litigation costs and reasonable attorneys' fees ("Losses"), sustained, incurred or required to be paid by the Rescon Indemnified Parties that relate to or arise out of any assertion against the Rescon Indemnified Parties that they should be responsible for any liabilities (including tax liabilities), transactions or occurrences affecting the Former Rescon Business, the Purchased Assets or the Assumed Liabilities.

Section 2.2    Claims. An indemnified party shall promptly give written notice to the indemnifying party after the indemnified party has knowledge that any legal proceeding has been instituted or any claim has been asserted, in respect of which indemnification may be sought under the provisions of Article II; provided that

failure to give such notice shall not preclude indemnification with respect to such proceeding or claim except to the extent of any additional or increased Losses directly caused by such failure. Upon receipt of notice by the indemnified party, the indemnifying party shall assume the defense thereof, including the employment of counsel reasonably satisfactory to the indemnified party, and the indemnifying party shall pay all fees and expenses of such defense. The indemnified party shall have the right to retain separate counsel, but the fees and expenses of such counsel shall be at the expense of the indemnified party unless (i) the employment of such counsel shall have been specifically authorized in writing by the indemnifying party or (ii) the indemnifying party has failed to assume the defense and employ counsel as provided above, in which case the indemnifying party shall pay the fees and expenses of the counsel employed by the Indemnified party.

Section 2.3    Computation of Indemnifiable Damages. The following deductions will be made in calculating the amount of indemnifiable Losses pursuant to this Article II: (a) the amount of any insurance recovery (net of insurance premiums paid for such insurance) with respect thereto received by or benefiting the indemnified party (and no right of subrogation will accrue hereunder to any insurer) and (b) the amount of any tax benefit or tax detriment to the indemnified party with respect thereto. If any such insurance recovery or tax benefit is received by an indemnified party after the payment of indemnifiable Loss, the indemnified party will immediately pay to the indemnifying party an amount equal to such insurance proceeds or tax benefit.

Section 2.4    Cooperation. Rescom and Northeast and their respective Affiliated Companies shall cooperate with each other in the defense of any litigation related to the Purchased Assets or Assumed Liabilities afford to each other reasonable access upon reasonable advance notice to witnesses and information (other than information protected from disclosure by applicable privileges) that is reasonably required to defend any litigation. The foregoing agreement to cooperate includes, but is not limited to, an obligation to provide access to qualified assistance to provide information, witnesses and documents to respond to discovery requests in specific lawsuits. In such cases, cooperation shall be timely so that the party responding to discovery may meet all court-imposed deadlines.

## ARTICLE III

## MISCELLANEOUS

Section 3.1    Entire Agreement. This Agreement and the Schedules referenced or attached hereto constitutes the entire agreement between the parties with respect to the subject matter hereof and shall supersede all prior written and oral and all contemporaneous oral agreements and understandings with respect to the subject matter hereof.

Section 3.2    Governing Law. This Agreement shall be construed in accordance with and all disputes hereunder shall be governed by the laws of the State of Delaware, excluding the United Nations Convention on Contracts for the International Sale of Goods, without regard to any conflict of law rules.

Section 3.3    Notices. Notices, offers, requests or other communications

required or permitted to be given by either party pursuant to the terms of this Agreement shall be given in writing to the respective parties to the following addresses:

if to Rescon:        Rescon Corporation
                     _____
                     _____
                     Attention: President
                     Fax: _____

if to Northeast:     Northeast, Inc.
                     _____
                     _____
                     Attention: General Counsel
                     Fax:

or to such other address as the party to whom notice is given may have previously furnished to the other in writing as provided herein. Any notice involving non-performance, termination, or renewal shall be sent by hand delivery, recognized overnight courier or, within the United States may also be sent via certified mail, return receipt requested. All other notices may also be sent by fax, confirmed by first class mail. All notices shall be deemed to have been given and received on the earlier of actual delivery or three (3) days from the date of postmark.

    Section 3.4    Parties in Interest. This Agreement, including the Schedules hereto, and the other documents referred to herein, shall be binding upon and inure solely to the benefit of each party hereto and their legal representatives and successors, and nothing in this Agreement, express or implied, is intended to confer upon any other Person any rights or remedies of any nature whatsoever under or by reason of this Agreement.

    Section 3.5    Counterparts. This Agreement, including the Schedules hereto, and the other documents referred to herein, may be executed in counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.

    Section 3.6    Assignment. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective legal representatives and successors. This Agreement may not be assigned by any party hereto, without the other party's express written consent.

    Section 3.7    Severability. If any term or other provision of this Agreement or the Schedules attached hereto is determined by a nonappealable decision by a court, administrative agency or arbitrator to be invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner to the end that

transactions contemplated hereby are fulfilled to the fullest extent possible.

Section 3.8    Failure or Indulgence Not Waiver; Remedies Cumulative.  No failure or delay on the part of any party hereto in the exercise of any right hereunder shall impair such right or be construed to be a waiver of, or acquiescence in, any breach of any representation, warranty or agreement herein, nor shall any single or partial exercise of any such right preclude other or further exercise thereof or of any other right. All rights and remedies existing under this Agreement or the Schedules attached hereto are cumulative to, and not exclusive of, any rights or remedies otherwise available.

Section 3.9    Amendment.  No change or amendment will be made to this Agreement except by an instrument in writing signed on behalf of each of the parties to such agreement.

Section 3.10    Authority.  Each of the parties hereto represents to the other that (a) it has the corporate or other requisite power and authority to execute, deliver and perform this Agreement, (b) the execution, delivery and performance of this Agreement by it have been duly authorized by all necessary corporate or other action, (c) it has duly and validly executed and delivered this Agreement, and (d) this Agreement is a legal, valid and binding obligation, enforceable against it in accordance with its terms subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and general equity principles.

Section 3.11    Interpretation. The headings contained in this Agreement, in any Schedule hereto and in the table of contents to this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. Any capitalized term used in any Schedule but not otherwise defined therein, shall have the meaning assigned to such term in this Agreement. When a reference is made in this Agreement to an Article or a Section or Schedule, such reference shall be to an Article or Section of or a Schedule to, this Agreement unless otherwise indicated.

Section 3.12    Conflicting Agreements. In the event of conflict between this Agreement and any other agreement executed in connection herewith, the provisions of this Agreement shall prevail.

## ARTICLE IV

## DEFINITIONS

Section 4.1    Affiliated Company.  "Affiliated Company" of any Person means a Person that controls, is controlled by, or is under common control with such Person. As used herein, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such entity, whether through ownership of voting securities or other interests, by contract or otherwise.

Section 4.2    Assets.  "Assets" means assets, properties and rights (including goodwill), wherever located (including in the possession of vendors or other third

parties or elsewhere), whether real, personal or mixed, tangible, intangible or contingent, in each case whether or not recorded or reflected or required to be recorded or reflected on the books and records or financial statements of any Person, including the following:

(i)     all accounting and other books, records and files whether in paper, microfilm, microfiche, computer tape or disc, magnetic tape or any other form;

(ii)     all apparatus, computers and other electronic data processing equipment, , automobiles, trucks, aircraft, rolling stock, vessels, motor vehicles and other transportation equipment, special and general tools, test devices, prototypes and models and other tangible personal property, but excluding fixtures, machinery, equipment, furniture and office equipment;

(iii)     all inventories of materials, parts, raw materials, supplies, work-in-process and finished goods and products;

(iv)     all interests in real property of whatever nature, including easements, whether as owner, mortgagee or holder of a Security Interest, lessor, sublessor, lessee, sublessee or otherwise;

(v) .     all interests in any capital stock or other equity interests of any Subsidiary or any other Person; all bonds, notes, debentures or other securities issued by any Subsidiary or any other Person; all loans, advances or other extensions of credit or capital contributions to any Subsidiary or any other Person; and all other investments in securities of any Person;

(vi)     all license agreements, leases of personal property, open purchase orders for raw materials, supplies, parts or services, unfilled orders for the manufacture and sale of products and other contracts, agreements or commitments;

(vii)     all deposits, letters of credit and performance and surety bonds;

(viii)    all written technical information, data, specifications, research and development information, engineering drawings, operating and maintenance manuals, and materials and analyses prepared by consultants and other third parties;

(ix)     all Intellectual Property and licenses from third-party Persons granting the right to use any Intellectual Property;

(x)     all computer applications, programs and other software, including operating software, network software, firmware, middleware, design software, design tools, systems documentation and instructions;

(xi)     all cost information, sales and pricing data, customer prospect lists, supplier records, customer and supplier lists, customer and vendor data, correspondence and lists, product literature, artwork, design. development and manufacturing files, vendor and customer drawings, formulations and specifications, quality records and reports and other books, records, studies, surveys, reports, plans and documents;

(xii) all prepaid expenses, trade accounts and other accounts and notes receivables;

(xiii) all rights under contracts or agreements, all claims or rights against any Person arising from the ownership of any Asset, all rights in connection with any bids or offers and all claims, chose in action or similar rights, whether accrued or contingent;

(xiv) all rights under insurance policies and all rights in the nature of insurance, indemnification or contribution;

(xv) all licenses (including radio and similar licenses), permits, approvals and authorizations which have been issued by any Governmental Authority:

(xvi) cash or cash equivalents, bank accounts, lock boxes and other deposit arrangements; and

(xvi) interest rate, currency commodity or other swap, collar, cap or other hedging or similar agreements or arrangements.

Section 4.3    Balance Sheet Date. "Balance Sheet Date" shall mean March 23, 2005.

Section 4.4    Governmental Approvals. "Governmental Approvals" means any notices, reports or other filings to be made, or any consents, registrations, approvals, permits or authorizations to be obtained from, any Governmental Authority.

Section 4.5    Governmental Authority. "Governmental Authority" means any federal, state, local, foreign or international court, government, department, commission, board, bureau, agency, official or other regulatory, administrative or governmental authority.

Section 4.6    Intellectual Property. "Intellectual Property" means all domestic and foreign patents and patent applications, together with any continuations, continuations-in-part or divisional applications thereof, and all patents issuing thereon (including reissues, renewals and re-examinations of the foregoing); design patents, invention disclosures; mask works; copyrights, and copyright applications and registrations; Web addresses, trademarks, service marks, trade names, and trade dress, in each case together with any applications and registrations therefor and all appurtenant goodwill relating thereto; trade secrets, commercial and technical information, know-how, proprietary or confidential information, including engineering, production and other designs, notebooks, processes, drawings, specifications, formulae, and technology; computer and electronic data processing programs and software (object and source code), data bases and documentation thereof; inventions (whether patented or not); utility models; registered designs, certificates of invention and all other intellectual property under the laws of any country throughout the world.

Section 4.7    Liabilities. "Liabilities" means all debts, liabilities, guarantees, assurances, commitments and obligations, whether fixed, contingent or absolute,

asserted or unasserted, matured or unmatured, liquidated or unliquidated, accrued or not accrued, known or unknown, due or to become due, whenever or however arising (including, without limitation, whether arising out of any Contract or tort based on negligence or strict liability) and whether or not the same would be required by generally accepted principles and accounting policies to be reflected in financial statements or disclosed in the notes thereto.

Section 4.8    Person. "Person" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization and a governmental entity or any department, agency or political subdivision thereof.

Section 4.9    Rescon Balance Sheet. "Rescon Balance Sheet" means the consolidated balance sheet (including the notes thereto) of the Rescon Business as of March 23, 2005.

Section 4.10    Security Interest. "Security Interest" means any mortgage, security interest, pledge, lien, charge, claim, option, right to acquire, voting or other restriction, right-of-way, covenant, condition, easement, encroachment, restriction on transfer, or other encumbrance of any nature whatsoever.

Section 4.11    Subsidiary. "Subsidiary" of any Person means any corporation or other organization whether incorporated or unincorporated of which at least a majority of the securities or interest having by the terms thereof ordinary voting power to elect at least a majority of the board of directors or others performing similar functions with respect to such corporation or other organization is directly or indirectly owned or controlled by such Person or by any one or more of its Subsidiaries, or by such Person and one or more of its Subsidiaries; provided, however that no Person that is not directly or indirectly wholly owned by any other Person shall be a Subsidiary of such other Person unless such other Person controls, or has the right, power or ability to control, that Person .

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, each of the parties has caused this General Assignment and Assumption Agreement to be executed on its behalf by its officers thereunto duly authorized on the day and year first above written.

RESCON TECHNOLOGY CORP.
CORP.

By:_____

Name:_____

Title:_____

NORTHEAST DEVELOPMENT

By: _*V. Klausgaard*_

Name: _H. KLAUSGAARD_

Title: _PRESIDENT_

## SCHEDULES

| | |
|---|---|
| Schedule 1.2(a)(vi) | Miscellaneous Purchased Assets |
| Schedule 1.2(b) | Specific Excluded Assets |
| Schedule 1.3(a)(v) | Miscellaneous Assumed Liabilities |
| Schedule 1.3(b) | Specific Excluded Liabilities |

Schedule 1.2(a)(vi)
Miscellaneous Purchased Assets

Schedule 1.2(b)
Specific Excluded Assets

Schedule 1.3(a)(v)
Miscellaneous Assumed Liabilities

Schedule 1.3(b)
Specific Excluded Liabilities

REBCON TECHNOLOGY CORPORATION
Condensed Balance Sheet
(Unaudited)
ASSIGNED TO, AND ASSUMED BY,
NORTHEAST DEVELOPMENT CORPORATION

ASSETS
-------

|  | March 25, 2005 |
|---|---|
| **Current Assets** | |
| Cash | $ 2,218 |
| Prepaid expenses | 20,000 |
| Total Current Assets | 22,218 |
| | |
| Fixed Assets (Net) | 24,413 |
| Prepaid Equipment Lease | 20,000 |
| Software &Technology License Agreement | 403,280 |
| Investment Speed of Thought | 296,720 |
| Other receivable | 50,000 |
| Total Non-Current Assets | 784,413 |
| | |
| Total Assets | $ 806,631 |

LIABILITIES
-------------

| | |
|---|---|
| **Liabilities** | |
| Accounts payable | $ 25,120 |
| Payable to shareholders | 690,806 |
| Total Current Liabilities | 715,926 |
| | |
| Total Liabilities | 715,926 |

Assignment & Assumption Acknowledged:

RESCON TECHNOLOGY CORPORATION

Henrik Klausgaard, CEO

NORTHEAST DEVELOPMENT CORPORATION

Henrik Klausgaard, CEO

# EXHIBIT G

**ROBERT S. TAYLOR**
**319 NORTH OAK PARK AVENUE, E**
**OAK PARK, IL 60302**
PHONE: 708/848-4369
FAX: 708/383-2782

April 7, 2005

Nayna Networks, Inc.
San Jose, California

Re: Conversion of promissory notes to
    shares of Rescon Tech stock

Attn.: Naveen S. Bisht

Thank you for your response to my faxed letter of 3/25/05. Due to your action I have received a call from Hendrik on 4/6/05. However, he indicated that the promissory notes would not be converted to "Rescon Tech," but to some company named "Northeast Dev. Corp."

My promissory notes indicated conversion to 300,000 shares of "Rescon Tech" stock.

There are several issues involving the <u>outstanding</u> promissory notes:

1.  What are the terms of the merger agreement to finalize these notes.
2.  What are the terms of the reverse stock split for the <u>unissued</u> shares of stock. Since no stock was issued (My request for their conversion was ignored.), the reverse split should not apply.
3.  What is your basis for not converting the promissory notes to "Rescon Tech" stock.

It appears from the above three items that the conversion of my promissory notes should result in the issuing to me of 300,000 shares of "Rescon Tech" stock or "Nayna Networks, Inc." stock, when issued.

Very truly yours,

Robert S. Taylor

cc: Hendrik Klausgaard      4/7/05 @ 10:05 p.m.
    Fax: 1/215/689-1934 → No Response
                          to fax #


EXHIBIT
G

# EXHIBIT H

*FAXED TO*
*1 215/689-19*
*ON 4/19/05*
*7:35 a.m.*

**ROBERT S. TAYLOR**
**319 NORTH OAK PARK AVENUE, E**
**OAK PARK, IL 60302**
**708/848-4369  Fax 708/383-2782**

*RE-FAXED 5-3*

*CERTIFIED MAIL*
*5-11-05*

April 19, 2005

Henrik Klausgaard
c/o Northwest Development Corp.
1500 Market Street
12th Floor, East Tower
Philadelphia, PA 19102

RE:  Telephone conversations of 4-6 and 4-8-05

Dear Henry:

As per the conversation of 4-8-05, I indicated that I had not received any of the five letters covering the handling of the merger and other pertinent details of activity.

I would appreciate receiving a fax of these five communications plus any additional information clarifying how the promissory notes are being handled.

Also, kindly inform me of the number of shares to be allocated to my account including the method of calculation to determine the number of shares.

The above listed personal fax number is active 24 hours a day even when I am away. From April 21st to May 1st I will be out of town.

Very truly yours,

*Robert S Taylor*

Robert S. Taylor

*NOTE !!*
*5-11-05*
*HENRY*
*STOCK NHVP HAS NOT*
*TRADED SINCE 3-29-05*
*1, WHY ?*
*2, IS THERE A PROBLEM ?.*
*3, PLEASE ADVISE*
*R. S Taylor*

EXHIBIT
H

1/3156689-19 84
on 4/19/05 @
7:35 a.m.

RE-faxed 5-3-05

**ROBERT S. TAYLOR**
**319 NORTH OAK PARK AVENUE, E**
**OAK PARK, IL 60302**
**708/848-4369 Fax 708/383-2782**

April 19, 2005

Henrik Klausgaard
c/o Northwest Development Corp.
1500 Market Street
12th Floor, East Tower
Philadelphia, PA 19102

RE: Telephone conversations of 4-6 and 4-8-05

Dear Henry:

As per the conversation of 4-8-05, I indicated that I had not received any of the five letters covering the handling of the merger and other pertinent details of activity.

I would appreciate receiving a fax of these five communications plus any additional information clarifying how the promissory notes are being handled.

Also, kindly inform me of the number of shares to be allocated to my account including the method of calculation to determine the number of shares.

The above listed personal fax number is active 24 hours a day even when I am away. From April 21st to May 1st I will be out of town.

Very truly yours,

Robert S. Taylor



# EXHIBIT I

# STAHL COWEN CROWLEY LLC

## ATTORNEYS AT LAW

55 WEST MONROE STREET   SUITE 500   CHICAGO, ILLINOIS 60603   312 641 0060   FAX 312 641 6959

June 10, 2005

TRENT P. CORNELL
Direct Dial: 312.377.7862
Email: tcornell@stahlcowen.com

## VIA CERTIFIED MAIL, FACSIMILE, AND FIRST CLASS MAIL

Henrik Klausgaard
Rescon Technology Corporation
1500 Market Street, 12th Floor
East Tower
Philadelphia, PA 19102

Henrick Klausgaard
Northwest Development Corporation
1500 Market Street, 12th Floor
East Tower
Philadelphia, PA 19102

Dear Mr. Klausgaard:

This law firm represents Robert S. Taylor with respect to the Convertible Promissory Notes he purchased from Rescon Technologies Corporation ("Rescon"). As you know, Mr. Taylor has contacted you several times—both over the phone and in writing—requesting that his Convertible Promissory Notes be exchanged for Rescon stock pursuant to his contractual rights. Despite these requests, Rescon (and/or its successor entities) have refused to convert the Promissory Notes.

On several occasions Mr. Taylor has requested an explanation of, at least, (a) why Rescon has refused to convert his shares and (b) the current status of his investment. Obviously, there is no legitimate reason that Mr. Taylor has not been informed of the status of Rescon and his investment in Rescon. Based on scant information, Mr. Taylor has been led to believe (with no supporting documentation provided) that his Convertible Promissory Notes in Rescon have been converted to another entity, either Naya Networks, Inc. or Northwest Development Corporation. We expect a full explanation of any purported alteration in Mr. Taylor's Rescon investment and demand that his contractual rights of conversion be honored.

While we are hopeful that this situation can be resolved without court intervention, but rest assured that we will that we will take all legal action to protect Mr. Taylor's interests in this matter. Accordingly, if we do not hear from Rescon or Rescon's counsel by June 17, 2005, we will assume that no reply is forthcoming and will take all appropriate legal action on Mr. Taylor's behalf.

Very truly yours,

Trent P. Cornell

cc: Naya Networks, Inc.
    Robert S. Taylor



EXHIBIT
I

```
******************* -COMM. JOURNAL- ******************* DATE JUN-10-2005 ***** TIME 16:04 *********

      MODE = MEMORY TRANSMISSION                 START=JUN-10 16:03      END=JUN-10 16:04

      FILE NO.=567

  STN    COMM.     ONE-TOUCH/   STATION NAME/TEL NO.                        PAGES      DURATION
  NO.               ABBR NO.

  001    OK        ∎            14089568730                                002/002    00:00:39


                                                      -STAHL COWEN CROWLEY          -

********************************************* -            - ***** -                - *********
```

# STAHL COWEN CROWLEY LLC

55 West Monroe
Suite 500
Chicago, IL 60603
(312) 641-0060
(312) 641.6959 - FAX

## *FACSIMILE TRANSMITTAL FORM*

| | | | |
|---|---|---|---|
| **DATE:** | June 10, 2005 | **NUMBER OF PAGES: 2** | |
| **TO:** | Henrick Klausgaard<br>Naya Networks, Inc.<br>Attention: President | **FAX NO:** | 215-665-5756<br>408-956-8730 |
| **FROM:** | Trent P. Cornell | **DIRECT:** | (312) 377-7862 |
| **MESSAGE:** | Please see the attached letter. | | |

IMPORTANT: THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL TO WHOM IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED AND EXEMPT FROM DISCLOSURE UNDER LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS BY MAIL.

IF YOU HAVE ANY PROBLEMS OR QUESTIONS REGARDING THIS FAX TRANSMISSION, PLEASE CALL (312) 641-0060.

## Receipt 1

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To _ResCar Tech Corp_

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

7002 2410 0005 2128 8998

PS Form 3800, June 2002     See Reverse for Instructions

## Receipt 2

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To _Northwest Dev Corp_

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

7002 3110 0002 8310 501...

PS Form 3800, June 2002     See Reverse for Instructions

## Receipt 3

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4 _Wave Network_

7002 2410 0005 2128 8981

PS Form 3800, June 2002     See Reverse for Instructions